number 23 55 187 and 23 3 1 9 8 so the appellant should please proceed good morning honors and may it please the court Jeff Michalowski for the jury banks deputy Jeremy Banks I'd like to reserve five minutes for rebuttal and the overarching question about the trial in this case as I see it is how could a jury possibly award or five million dollars for injuries resulting from two fist strikes and a dog bite which lasted less than a second they didn't require any hospitalization and which never led to any sustained therapy counseling or anything of the sort how did the jury get to five million which is a number that's really outside the mainstream for cases of this type and what the controlling law tells us is that a verdict can't be permitted to stand if it's found to be in quote in any degree the result of appeals to passion prejudice that's from judge Gould's 2005 decision in Watak company that we cited in our papers and here the appeals to passion and prejudice were really the primary thrust of this trial and we break it down into the really three critical factors that led to liability finding and the extreme outlier of a monetary valuation attorney misconduct an erroneous concealment instruction by the court in a direct and transparent appeal to fear so let me walk through these briefly first we have the plaintiff's attorneys expressly asking the jury to act out of passion and prejudice during closing argument we have the plaintiff's attorney telling the jury that quote revenge is a dish best served cold the plaintiff's counsel tells the jury pointed pointed at the and said these are bad people they don't deserve they don't have even one scintilla of humanity they don't deserve to be in the same room as the plaintiff and his family and in addition to these highly prejudicial remarks we also have the plaintiff's attorney not directing the jury to the damages instruction but instead raising questions like this it's 40 million enough is 50 million 100 million we'll leave that to you so long as it's substantial leaving the jury with the impression that it was appropriate to compare mr. Miles's damages to the value of a modern art painting sold at Sotheby's and the 50 million dollar Mondrian that plaintiff's counsel pointed out in the in the closing argument so this was a obvious call by experienced trial counsel to get the jury to enter a verdict that wasn't based on reason but was instead designed to punish the government and to punish the police and and we know first case that we said in our papers is that punitive damages are not available against public entities second your honors we have an instruction from the district court that really all but ensured a verdict in in plaintiff's favor and that all but guaranteed that it was going to be a large one the district court judge told the jury that the government had hid evidence from them that the police had lied to them and concealed willfully concealed evidence and corrupted the trial and taken away their right as jurors to decide the issue fairly really important here your honors is that this was a non bifurcated proceeding what this means is that the same jury that received that instruction was the same one that decided not only liability but also the five million dollar award of damages and I can I stop you and ask a question about that so I had understood your challenge to this instruction as being there wasn't evidence to support what the judge said happened or something akin to that and not to have tied this to anything about the instruction led to an improper view of what could be given as damages is there anything in your opening brief that you can point to that makes the link between this instruction and punitive damages being like snuck in off the top of my head no I do think that we discuss in the introduction at least that the overall verdict and so that the liability judgment and the damages are infected by the same sorts of errors in this case so yeah our contention is certainly that that five million dollar figure was informed by the same errors that draw the the liability finding to question now there's also this direct appeal to fear and again we have experienced counsel here and they accomplished this in a number of ways but the most glaring was their photo that vicious dog with a shock collar that they included we've included that in our papers that went to the jury deliberation room with them that was admitted into evidence and the jury had this image of a dog almost frothing at the mouth can I ask you about that too though I don't understand really how that would have made any difference because I didn't understand there to have been testimony about fear of the dog being part of the emotional distress it seems like what the dog looked like was never really at issue in any of the description of where the damages were that the jury was allotting so why would it matter what the dog looked like I agree completely your honor it doesn't matter mr. Miles didn't view this this lunging dog for the most part he's walking backwards right so that fear shouldn't be part of his damages this is what is commonly referred to as a classic reptile tactic where the goal is not to introduce evidence due to its relevance to damages or to liability but to inspire fear to inspire the jury to try to protect the community from harms so putting this image which was taken straight from a stock photo from the internet a lot of dog bite plaintiff law firms put this on their on their website the witness did say this is this is the right kind of dog this is what the dog looked like I mean there was testimony I guess I just I just don't see I understand you think it wasn't relevant so it shouldn't have been admitted but I also just the other side of that is it's just sort of this irrelevant piece of information that didn't tie to anything so I don't know why the I don't see any reason to think the jury used this to increase the damages because there wasn't testimony about like this is a scary dog and that's the problem your honor so as to the question of whether the dog was the same type yes the witness did say yes this is same kind of it's a Belgian Malinois as to but but the comparisons ended there the witness also said that before a dog is about to attack yes their ears go down like they are in that image but there was no testimony that the most glaring parts of those images which is the dogs baring its teeth and kind of frothing at the mouth and this military shot-caller that is not what there's no evidence that that was anything looking like what a boo-boo the animal companion or the animal partner in this case looked like so your I'd suggest that the fact of its in irrelevance that yes this this image was entirely irrelevant it shouldn't have been employed but I I think that only compounds the risk of prejudice just because of the nature of that photo the jury went into that deliberation room with two photos one of boo-boo one photo actually a boo-boo and then one photo of this militarized dog from a stock image that that's that's inviting it's a direct call to passion and prejudice by plaintiffs counsel that's improper for my remaining time I'd like to focus on three issues if that's what counsel before before you move on similar to a question I asked counsel during the the previous argument if hypothetically we were to agree with you that remitted or as to damages was appropriate here what and if we were to decide for example that we were going to exercise our discretion rather than setting a remitted or amount setting a maximum remitted or amount and leaving the actual amount to the district court what would you suggest as the maximum amount if we were going to exercise our discretion in that way to set a maximum amount as opposed to leaving it entirely to the district court we looked at the benchmarks and we provided the court with a great deal of data on damages awards in comparable cases and it depends on how you slice the data but it's kind of striking no matter how you strike the data the numbers come in around 1 million so the median is 1 million 20,000 the average is 950,000 so right around that seven figure mark is what the benchmarks will suggest would be a verdict that a jury could reasonably reach in a case like this and does that mean that's the maximum no your honor the law says that you know we don't you can't because the district court can't be constrained with a cap based on prior cases but these benchmarks are clearly instructive if there were reason to exceed them in this case we want to see evidence of that and what I think is very interesting is that plaintiffs expert indicated the types of trauma that mr. miles has experienced are typical of those that one might expect of someone who has an encounter a negative encounter with law enforcement like this so the testimony from plaintiffs own expert was that this was not an unusual case it's actually would be in line with those benchmarks so I think you suggest that there's no reason to exceed them in this case I do want to spend a little bit of time on the willful concealment instruction your honor because the district court found that there was bad and malfeasance by the county in the discovery process and that there was prejudice to the plaintiff and based on that the district court informed the jury that the government was hiding evidence from them and the police were hiding evidence from them an incredibly damaging instruction almost impossible to recover from that instruction was based on seven uses of force but if we down on those your honors we see that there's no evidence of bad faith by the county and no evidence of prejudice to the plaintiff really importantly four of those seven incidents that were included in the willful concealment instruction those had uses of course that were reflected in critical incident review board reports these are the privileged reports where law enforcement can the self-critical way to look at challenging incidents and think about what they can do about that the court made findings that because the county didn't include those curb reports those privileged reports on a privileged log that means that plaintiff was severely privileged because he had no way of knowing that those reports were even out there and it found that the county acted in bad faith for the same reasons that was a clear error because it's inconsistent with the undisputed facts what the facts show here is that the county did disclose the existence of the curb reports it did did so six years earlier both in verbally in an exchange on the record a deposition and in a letter that followed that deposition so as I'm sure the court already has I'd ask you to again look at to er 197 through 198 that's the letter where the county council's office informs plaintiff's counsel we're not giving you the curb reports because we contend that they're privileged and not responsive counsel said the same thing so counsel I have the letter in front of me I'm familiar with what was said at the depo where in the letter does it say the there are these reports specifically that we're not giving you with a description in terms of itemization of yeah in terms of in terms of in terms of some type of itemization similar to what would actually be on a privileged log there there is that itemization did not occur so so what it what it says is as discussed there is a critical incident review board which I view as attorney client and attorney work product protected but I didn't see anything in the letter which went on to say and by the way here's some we're withholding is more I'm sorry we finished yes okay so if you look at the deposition testimony it's I believe the concluding remark is and those reports are kept in the office of legal affairs there's an affirmative statement that these documents exist here's where they are we're not giving them to you because we contend that they're privileged I I guess I read the deposition testimony a little bit more than you do but it it says what it says and it and critically your honor in response to that plaintiffs counsel says on the record more work to do so there's a recognition by plaintiffs counsel at that deposition in 2016 or 2017 I'm not recalling but plaintiffs counsel recognizes you're withholding documents there's I need to take action to recover those so plaintiffs counsel could then have initiated the meet and confer process could have gone to court with a motion to compel could have served a new request for production specifically asking for all curb reports there was more work to do the problem here is not that the county withheld information in bad faith the problem here is that the county disclosed it and plaintiff didn't take action and then first went to the court with about this issue after they were inadvertently disclosed well after the close of discovery so your honors there's was this done perfectly I think it's fair to say the answer is no but the court predicated its instruction on a finding of bad faith by the county which is a fairly extraordinary finding right and we want to see evidence to support that but the record what it shows here is actually good faith in an effort to to to disclose information I I'd like to briefly address the damages award as well because the figure is one that no matter how we articulate the standard it it's gonna meet that it is something that shocks the conscience that this case with with injuries that are not atypical for this type of incident that the plaintiff received from the jury an amount that exceeds not only similar cases but also wrongful death cases cases where a child loses a parent or husband loses a wife right so this this figure five million it's not just that it's large it's it's really not a reasoned decision this was by design this was at the invitation of plaintiffs counsel compare this number if you want to look at how much to give mr. Miles let's think about the value of a Mondrian painting right not asking the jury to fairly come up with a calculation that compensates him for his loss that's not what this what it does unless there are questions I'll reserve my remaining three minutes I have no questions no questions and engine freedom apparently they have none right now so go to the appellee thank you your honors shame Murphy on behalf of Mikhail my house plaintiff and I don't even really know where to begin with with this appeal it's um it's a case that involves a lot of very clear discovery abuses by the county that resulted in what I think are largely non sanctions orders that were that were sort of set out in the form of the sanction order that then created this verdict and now has created a whole set of new misconducts by the county during the appellate process I've never seen something like this before in my 18 or so years doing appeals and it's it's quite remarkable and I see that the county is kind of doubling down on these arguments about how they did the discovery in this case which was laid out very clearly by Judge Houston in his numerous orders and in the many hearings that were held on this issue so I guess the starting point for me and I guess is the I'd like to start with a dog bite photo or the dog the vicious dog photo that photo was introduced as rebuttal evidence to the other photo the council mentioned of bubo that depicted bubo's is very congenial nice dog and this is a dog that's used by police as a working dog that does a very specific kind of task and counsel for plaintiff wanted to make sure that the jury was not given the misimpression that this dog is a nice dog that the experience that Mikhail Myles had that night was somehow one that involved a dog that you would spend time with your children with so the dog was never introduced as the court was asking about for the purposes of evidence or for purposes of damages it was introduced to rebut the impression of what this dog was and the role that it played that night was there was there any evidence that the bubo that night looked like this evil smiling dog or that your clients saw bubo look like that there's a trim I'm I don't know there's a tremendous amount of evidence that bubo was acting extremely aggressively throughout the entire encounter and that deputy banks was using bubo very specifically to create a lot of tension and anxiety or whatever it was that he was doing in that context there's testimony the dog was barking furiously the entire time it made it impossible for Myles to Mikhail Myles to hear what any of the officers were telling him to do and at one point the dog actually bit Myles and presumably when the dog did that it looked a lot like what the photo of the dog that depicts an attacking dog look like and that as that is in fact what deputy banks testified to this was a fair and accurate representation of what an attack dog that is used by the police looks like before they bite and that's what bubo did it bit Myles so I think that there's enough evidence there to lay a foundation one that that was what bubo look like and to the bubo was doing things like that that night I think the big issue here though from from our standpoint is that this case really is a product of an enormous amount of discovery gamesmanship by the county it's interesting that they're making this argument that nothing that they did shows bad faith and yet the arguments that they want to focus on are this the sort of song and dance game that they played with the curb reports but they don't really talk about the Valdez issue the complaint that was filed for the essentially receives the complaint in close proximity to when they file their summary judgment motion plaintiffs counsel attempts to get the document in front of the court after reaching out to County Council to try and get a certified copy of the report County Council telling them stop you for a second so I'm not sure that the connection between the instruction about the discovery abuse and damages was preserved by the other side but let's just say for a that this argument was preserved okay why would it be appropriate to let the jury sort of sanction the city I mean it seems like the discovery abuses to the extent they deserved a monetary sanction I would have thought that should be in a sanction from the judge and not sort of given to the jury to decide as damages I I'm not sure I follow because I don't I don't know that it was given to the jury to decide his damages I think that's what the other side is arguing today I don't really think it was in the opening brief I think but the argument seems to be that this instruction that was given about discovery abuse inflamed the jury to punish the government by giving more damages I mean I guess your guess is as good as mine it wasn't briefed in the in the papers that wasn't what they were arguing when they were talking about the the instruction so I don't I don't know that it was given to the jury I don't think that it would be relevant I'm you know I don't know you do agree though that that wouldn't be like if the if the instruction had added and you can factor this into your damages calculation that would be wrong correct yes all right go ahead please finish I had an anodyne comment about how juries are supposed to follow the instructions are given and the instruction didn't tell them to factor that into damages award but I go ahead all right so let me let me turn to an issue that concerns me about the amount of the damages unrelated to the concealment instruction when I read the arguments that were made to the jury by counsel I have real concerns that in many places counsel was asking the jury to punish the defendants and I'll give you a couple of examples of areas of my concerns for er 756 we need you to say to the jury we need you to say to the county we don't want you to have that policy you need to reform you need to get your act together at er 761 we ask you the jury to show courage make them take responsibility tell them we don't like what you're doing at the sheriff's department scr62 85 we're going to ask for significant damages for what they did to him and also for what they need to do to reform and change their policies and then er 730 not just to make this man whole but to say that the county itself had policies in place that need to change they need to be accountable it's time to for reform you can do that with your verdict you and you alone as I read these and other statements that were made to the jury what I see is an appeal to the jury to punish the defendants in the same exact way that there would be an appeal to punish defendants in a case where there was a punitive damages instruction some of these things sound just like a punitive damages instruction to me and why would it be how would these be justified as not as an attempt to get them to award compensable damages as opposed to punish the defendants and that's a real big concern of mine here and it's a good question I think that the answer lies in one what the law permits and into how it was presented to the jury that the concept of now as a structure is to create an incentive for entities like you know that the San Diego Sheriff's Department and County to reform policies and practices that they have that encourage facilitate or otherwise endorse really bad behavior on the part of their employees and people acting on behalf of them and so there is a kind of like an essential component of this the Monell liability 1983 actions is to create that incentive and that was actually discussed by the court and counsel when they when this issue was brought up you know to what extent can this be presented to the jury and the court concluded that it was fair for counsel for plaintiff to argue that in imposing liability you are creating that incentive so you're doing kind of a two-fold thing when you're imposing liability on the county for the harm that was caused we're also creating a deterrent for future behavior the and the basics of that are is that that's a that's a recognized thing is laid out in the brief that that that is policy consideration of Monell and that is a kind of a fair game argument or a fair game structure for what Monell does and how it should operate the other component to this is how it was presented to the jury and the jury was told about this in the context of the liability argument the the closing argument was split into two parts you had the first part which was liability and the second part which was damages and all of the stuff that was said by counsel during during closing argument that had to do with reform and creating a deterrence for the county was presented in the context of liability and was not connected to damages and so there I mean like plaintiff's counsels are kind of put into these sticky situations where they're trying to present to the jury the the job that they are to perform you go through the instructions you're going through all the items you know these these different elements that they're supposed to establish you're explaining to them the the rationale for why this stuff exists they can understand the job that they're to perform but at the same time you're kind of caught between you know what it is that the the policy objectives is something like I'm an L claim are and what types of damages are actually allowed to be a word and was was that is what you just said also applicable to so over lunch I had a chance to reflect on the old saying revenge is a dish best served cold I mean I you know there's a lot of extremely flowery language that's used in closing arguments and there's an enormous amount of discretion it's given to plaintiffs and defense counsels to make their arguments I you know I can't I can't attest for I can't you know it's if you were to penalize a counsel for using spicy language in a closing argument this the docket on this court would be a very deep one indeed but I you know like I in that context I don't you know you're you're looking at a person who was you know the way this is being presented to the jury by the you're looking at a person who wasn't a person who committed crime who wasn't a suspect who wasn't who hadn't done anything wrong that night and was essentially plucked you know as God as the hand of God would operate was plucked out of his world and put into this incredibly horrible experience and there's a kind of expectation of time those compensatory damages to a sense of justice so to speak and I think that's what counsel was speaking to I don't think that there is a deep and lengthy appeal to punitive style damages awards because counsel for plaintiff was very aware that this is a fine line that needed to be towed because of the discussions that they had with count with the court and that it was on on the one hand his job to make sure the jury understood what they were doing and advocate zealously for his client now the other hand not transgress into that boundary where they are asking for impermissible punitive punitive damages was there an objection about the revenge comment no like there there weren't a lot of objections at all so most anything I don't think there were there was an objection to the mandorian painting that was lodged I think that was the only objection during actual clothes it was also an objection I think it er 807 tell the community this isn't okay and that was overruled right but that wasn't related that's a voice the community and lemonade argument that wasn't sorry no no go ahead so if that wasn't specifically related to the punitive component there was an eliminated have been filed by belief related to this voice the community argument and it was my understanding what that objection was targeted at the district court in your view okayed what you said and in the discussions with the district court the district court's decision was not what defendants had wanted right in the context of that issue correct yes and I think you know you have one objection to a nearly 100 page long closing argument it's hard to say that that's like the pervasive style of misconduct that would give rise to a prejudiced verdict I mean by and large we're looking at for I think I think defense counsel points out four instances of what it considers to be an appropriate commentary in a enormously long closing argument well we also we also have to look at the amount of the general damages right well I don't know that the I mean the argument isn't that's okay I mean I suppose I if the it's sort of an argument that leads back to itself it's a tautology in a sense like the damages just you know justify making the that this is an improper style of argument well I mean that's not quite the way I would look at it I would look at it as if there had been general damages of $100,000 it would be like even if there were some error here it was obviously harmless I well I think in this context I know so this is a good segue into the damages contingent or the damages issue the five million dollar damages award is not a wildly large number this is a young man who had no criminal history who was subjected this horrifying and terrible experience and wound up with admittedly largely invisible injuries but injuries that for most people that suffer from PTSD could be not just lifelong but devastating and and life-altering debilitating conditions and so if you take someone who's relatively young as Mikhail Myles was and change him for the rest of his life it's that's a there's a lot of time on this planet spent laboring under the weight of a harm that was you know imposed upon him for reasons that aren't connected to anything that he did other than just having the misfortune of being in the wrong place at the wrong time and having the the the state or you know the as it were you know and its agents acting out in this horrifying way so I don't the five million dollar number when you spread it out over the entire lifetime of this particular individual who looked like a very promising young man at the time in terms of non-economic harm is not some enormous number it's it's a it's not a small number but it's not some outrageously large number so I think you know if you look at this from the standpoint of was the jury inflamed by these arguments I you know count plaintiffs counsel was asking for really large numbers or was at least intimating at the idea of very very large numbers and to see that the jury worked its way to this reason five million dollar number you know I think it was eight hundred thousand for past economics and four point two for futures it shows the jury was not inflamed I mean you would mean because so that would mean if in a future case a lawyer asked for five billion dollars in damages and the jury only gave one that would be evidence that it wasn't excessive because they only gave the plaintiffs lawyer 20% of what he wanted well it's a factor to consider it is something that plays in the analysis I'm not I agree with you someone asked for five billion dollars and they got one billion the number well it would depend on the harm but the one billion seems outrageous you know in a vacuum but in this context five million doesn't seem outrageous given the injuries that were sustained by mr. miles and I mean it is operated in a context where if you had a 1 billion dollar claim you know and ask and you got two million dollars as a verdict that that Delta between those two says something about what the jury did and how they evaluated the request and the harm that was actually sustained by the the plaintiff I do want to circle you just spend a moment on the sanctions motion because I I do find like deeply troubling the way that this particular appeal was presented to the court the way the arguments were made there was a lot of prejudice arguments that were not really founded in a in a factual or legal basis there was a lot of what struck me as being purely frivolous arguments there was a extremely distorted presentation of the record many of the hearings that were held by the court dealing with the sanctions issues were either not included or only a portion of them were included the way the ruling was arrived at by the court and the analysis and reasoning that it employed wasn't accurately or fairly represented in briefs and not you know I understand that counsel is given an opportunity to be a zealous advocate but there's a point at which the job stops being advocacy and starts being something different and what's striking about this is that this is a case that involves you know a recognized amount of misconduct and obfuscation by counsel for my counsel and the county or the county throughout the trial proceedings and it really did create an enormous burden on the part of plaintiff to not just have to counter the arguments and address in a very straightforward way the issues on appeal but to have to go and like correct the record and actually include these portions that were excluded and give that further context and explain why what had been said it's not just you know sort of a advocates position on this but really a misrepresentation of what happened and how the rulings were arrived at and I think that that's it's endemic of the fact that like many of the issues that are raised were not objected to there's a kind of like that the miles or the Monell argument they're making that the claim should not have been revived is kind of this absurd argument where there's a jury verdict that supports the Monell verdict and they're not contesting that substantial evidence doesn't support the Monell verdict but at the same time they think that they should argue that the court should have not revived the Monell claim even though the reason it was struck in the first place is because of misconduct they engaged in in connection with the Rube Goldberg device of disingenuous obfuscation and I I found that to be troubling I've never filed a motion for sanctions in an appeal before and I and I felt that this was a compelling context and I don't think that the damages award in this context really was outrageous I don't think it went beyond what was appropriate given who he was a preschool teacher and who he a young preschool teacher family person and who he became this person who was very affected by a permanent disability like PTSD anxiety depression it appears that I'm out of time so unless there are any further questions from the court I have no question what was there time for a pound left okay sorry about that so a few points in response judge Freeland you asked about whether the there was a link in the briefing between the concealment of evidence destruction and the damages amount awarded we draw that out at page 2 2 through 3 right at the outset we say that the five million dollar verdict makes sense only as an effort by the jury to punish the county for its alleged conduct and its alleged concealment of evidence to respond to just a few points that my colleague can I just ask I mean so yes that sentence is there there's a gesture at it but there's no legal argument where you say this instruction led to this improper punitive damages thing through the damages I mean I know you make that sort of argument in other places but not as to this and I don't think in the trial either you said whoa whoa whoa if you give this instruction it's going to have this damages effect and that's going to be a punitive thing you're not allowed to do I'm not even sure you made an argument anywhere that the the sum total of all this was leading to a punitive effect that isn't proper did you I don't think we use the terminology of punitive damages we did request bifurcation which was denied that could have helped cure some of these issues but yes our contention is that both the liability finding and the the amount are infected by not just by the attorney misconduct but also by the district courts instruction I'm just thinking that the issue of whether this instruction led to improper damages is somehow at most on plain error review of some sort because I mean I just don't think this this link was drawn in the trial in a way that it could have been corrected the way you're now trying to say it at oral argument today well I mean the willful concealment instruction was strongly objected to I don't know if they were on totally other grounds on the grounds that it was false and that's a different issue that's what you argued in your brief to us too was that it was false which is a different issue than that that causes this legal problem with the damages I understand the courts the courts understanding of that thank you with my very limited time I would just like to respond to counsel suggestion that argument closing argument was split into a clean line between merits argument and damages argument no there was also rebuttal argument at the conclusion and that's where attorney ballot ban made the explicit request for revenge which is I think plainly improper it is so this is it we can't sanitize this as a request for deterrence this was a request to and and to and to to take revenge final point the idea that there was one objection during closing to over a hundred pages of argument during the green portion of the closing argument which was the purported damage instruction County Council raised a multiple times said this is argument number two this material should not be appropriate those were overruled and objection on this and the district court said preserved I'm sorry what was the objection that was the standing objection was it about this motion eliminating the objection was with respect to plaintiffs counsel making improper damages arguments in the closing argument using language that wasn't tied to valuation of damages and instead calling for you know punishment or a message for the community that that's sort of mismatch between how the jury was instructed and how the law requires them to decide economic damages you happen to have the page for where the standing where this was where you the standing objection was explained what what it was the preserved objection no I I could find it in short order however in prison that the clerk I'd like to look again at how that was presented so it would be helpful to me to have the page just present present the page sets to the clerk of the court and the clerk will advise the panel not through a letter through I should just unless unless there any further questions will submit okay I have no further questions myself thank you very none this case shall be submitted and again I want to thank counsel on both sides for the excellent arguments in this challenging and difficult case and I also want to thank counsel for appearing on short notice to do this remotely so that we could proceed with the appeal despite the great devastation from the fires in in California so thank you the case is now submitted and the parties will hear from us in due course let's think that adjourns us thank you for this session stand adjourned
judges: GOULD, FRIEDLAND, BENNETT